# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLENN GREENBERG and KIM GREENBERG, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>CITIBANK, N.A.<br><br>         Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. Violation of New York General<br>    Business Law § 349;**<br><br>**2. Violation of the New York<br>    General Obligations Law § 5-601;**<br><br>**3. Breach of Contract; and**<br><br>**4. Unjust Enrichment**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Glenn and Kim Greenberg, husband and wife, ("Plaintiffs"), individually on behalf of themselves and on behalf of all others similarly situated, bring this action, based upon personal knowledge as to itself and on information and belief as to all other matters, against Citibank, N.A., ("Citibank" or "Defendant") and allege as follows:

## NATURE OF THE ACTION

1.     This is a class action based on Defendant's violation of New York General Obligation Law § 5-601 ("NY Gen. Oblig. Law § 5-601"), and similar statutes in other states, which require mortgage lenders to pay interest on money received in advance from the borrower for tax and insurance that is held by the lender in an "escrow" account until payment is due.  In addition to directly violating NY Gen. Oblig. Law § 5-601, and a similar statute in Maryland, Defendant breached its mortgage agreement with Plaintiffs, which expressly obligated it to comply with all federal and state laws, as well as the mortgage agreements of all members of the Classes (defined below), which contained the same express obligation pursuant to the form

mortgage agreements used by Defendant.  As alleged herein, during all or part of the Class Period (defined below), Plaintiffs paid thousands of dollars into an escrow account maintained by Defendant and its agent, affiliate and subsidiary, CitiMortgage, Inc. ("CitiMortgage"), but received no interest on those payments.

2.      Plaintiffs and the Classes (defined below) bring this action for damages, restitution and reimbursement, as well as injunctive relief, pursuant to NY Gen. Oblig. Law § 5-601; NY General Business Law ("GBL") § 349; breach of contract; and unjust enrichment.

## JURISDICTION AND VENUE

3.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)-(c) because the Defendant conducts business in this District and is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. Defendant's contacts with this District are also sufficient to subject it to personal jurisdiction.

4.      Venue is further proper in this District insofar as this action is related to the action pending in this Court styled, *347 Townhouse, LLC v. Citibank, N.A.*, S.D.N.Y. Case No. 19-cv-542-LAP.

5.      The aggregate amount in controversy exceeds $5 million (exclusive of interest and costs), and at least one class member (as well as the Plaintiffs themselves) resides in a different state than that of Defendant; hence there is at least minimal diversity between the parties. In addition, there are well over 100 plaintiffs in the expected Classes (defined below). Therefore, jurisdiction is present under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 (CAFA).

## PARTIES

5.    Plaintiffs Glenn and Kim Greenberg, husband and wife and co-mortgagors, at all times relevant hereto were residents and citizens of the State of New York. Plaintiffs own a residential property located in Merrick, New York that was the collateral for a mortgage loan made to Plaintiffs by Citibank.

6.    Defendant Citibank is one of the largest national banks and one of the largest mortgage lenders in the country.  Defendant originated the mortgage at issue in the State of Missouri and serviced that mortgage from the State of South Dakota.  Defendant enters into and/or maintains residential property mortgage agreements for property located throughout the country, including in New York.

## SUBSTANTIVE ALLEGATIONS

7.    Defendant and its subsidiaries, agents or affiliates, including CitiMortgage, maintain escrow accounts for its customers from which they pay property taxes and/or insurance premiums.  Defendant, and its subsidiaries, agents or affiliates, collect from the borrowing party the projected amount that the borrower will owe for tax and insurance on the mortgaged property.  Then, Defendant, and its subsidiaries, agents or affiliates, directly pay the taxes and insurance due on the borrower's mortgaged property from the escrow account.

8.    Because the funds paid into an escrow account remain the *borrower's* money, New York law requires all "mortgage investing institutions" to pay at least 2% interest on such funds,[1] pursuant to NY Gen. Oblig. Law § 5-601, which states as follows:

---

[1]    On January 19, 2018, the Superintendent of the New York Department of Financial Services issued an Order under Section 12-a of the New York State Banking Law with respect to the interest required to be paid on escrow accounts established in connection with loans secured by 1-6 family owner-occupied residences or any property owned by a cooperative apartment cooperation.  Under the new rule, the rate must be at least equal to the lesser of 2.00% or (ii) the

§ 5-601.  Interest on deposits in escrow with mortgage investing institutions:

Any mortgage investing institution which maintains an escrow account pursuant to any agreement executed in connection with a mortgage on any one to six family residence occupied by the owner or on any property owned by a cooperative apartment corporation, as defined in subdivision twelve of section three hundred sixty of the tax law, (as such subdivision was in effect on December thirtieth, nineteen hundred sixty), and located in this state shall, for each quarterly period in which such escrow account is established, credit the same with dividends or interest at a rate of not less than two per centum per year based on the average of the sums so paid for the average length of time on deposit or a rate prescribed by the superintendent of financial services pursuant to section fourteen-b of the banking law and pursuant to the terms and conditions set forth in that section whichever is higher.

9.      Numerous other states in which Defendant does business have similar laws requiring that interest be paid on escrow accounts, including Maryland (collectively with NY Gen. Oblig. Law § 5-601, the "State Escrow Interest Statutes").  *See* MD. Comm. Law Code Ann. § 12-109 (Maryland).

10.      In or about September 2014, Plaintiffs obtained a mortgage loan from Defendant for their home in Merrick, New York, which home is occupied by Plaintiffs.  In connection with that refinancing, Plaintiffs entered into a loan agreement with Defendant, secured by a mortgage on the residence (the "Mortgage Agreement").  The Mortgage Agreement was a uniform agreement prepared on "New York – Single Family – Fannie Mae / Freddie Mac UNIFORM INSTRUMENT."  Section 3(b) of the Mortgage Agreement states under the heading "Lender's Obligations":

Lender will not be required to pay me any interest or earnings on the Escrow Funds *unless either* (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or *(2) Applicable Law requires Lender to pay interest on the Escrow Funds.*  (Emphasis added).

"Law That Governs This Security Instrument" is defined in Section 16 of the Mortgage

6-month yield on U.S. Treasury securities on the last business day of the preceding calendar quarter.

Agreement to include both federal law and "the law of New York State."

11.     From the time that Plaintiffs entered into the Mortgage Agreement through the repayment of that loan in December 2020, Plaintiffs made monthly payments into an escrow account maintained by Defendant, and its subsidiaries, agents or affiliates, for the pre-payment of property taxes and insurance on the property (in addition to the regular monthly payments of principal and interest on the loan).

12.     During all times in which Defendant and its agent, affiliate and subsidiary CitiMortgage maintained Plaintiffs' escrow account, neither Defendant nor CitiMortgage paid Plaintiffs the interest mandated by both NY Gen. Oblig. Law § 5-601 and Plaintiffs' Citibank Mortgage Agreement.  Defendant has thereby violated New York law, while enriching itself on the free use of the funds paid into the escrow account by Plaintiffs.[2]

13.     Citibank's and CitiMortgage's failure to pay the interest mandated by NY Gen. Oblig. Law § 5-601 and Plaintiffs' Citibank Mortgage Agreement is confirmed by monthly loan statements provided to Plaintiffs by CitiMortgage.

14.     In or about November 2018, servicing of Plaintiffs' loan was transferred to Defendant's agent, Cenlar, pursuant to a subservicing agreement with Citibank, while Defendant remained the owner and mortgagee of Plaintiffs' mortgage loan.  During the time when Cenlar serviced Plaintiffs' mortgage for Defendant, Plaintiffs were paid interest on their escrow account.

15.     Citibank has provided no explanation as to why Plaintiffs were paid the interest required by NY Gen. Oblig. Law § 5-601 and Plaintiffs' Citibank Mortgage Agreement after

---

[2]     Defendant's policy of denying interest on escrow accounts is at odds with other mortgage lenders such as Wells Fargo Bank, N.A., the largest mortgage originator in the United States, which complies with New York law and pays interest on its borrowers' escrow accounts.

but not before November 2018, while at all times Citibank was the owner and mortgagee of Plaintiffs' mortgage loan.

16.     Upon information and belief, Defendant's form mortgage agreements for properties located outside New York incorporate, adopt and require compliance with the State Escrow Interest Statutes in the states where the State Escrow Interest Statutes apply.  *See, e.g.*, *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1191, 1197 (9th Cir. 2018), *rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018), *cert. denied* 139 S. Ct. 567 (2018); *Hymes v. Bank of Am.*, *N.A.*, No. 18-cv-2352 (RRM), 18-cv-4157 (RRM), 2019 U.S. Dist. LEXIS 172107 (E.D.N.Y. Sept. 30, 2019).

## NO FEDERAL PREEMPTION DEFENSE

17.     Prior to July 21, 2010, Defendant may have been relying on the supposed preemption of New York law by the National Banking Act of 1864 ("NBA"), or other federal law.  However, the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. No. 111-203, H.R. 4173) (the "Dodd-Frank Act"), enacted on July 21, 2010, clarified the relevant NBA preemption standard, as follows:

State consumer financial laws[3] are preempted, only if

> (A) application of a State consumer financial law would have a discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that State;
>
> (B) in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in *Barnett Bank of Mario County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996), the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers; and any preemption determination under this subparagraph may be made by a court, or by regulation or order of the Comptroller of the Currency on a case-by-case basis, in accordance with the applicable law; or

---

[3]     "State consumer financial law" means a state law that does not discriminate against national banks and that "directly and specifically" regulates financial transactions between a national bank and consumer.  12 U.S.C. § 25(a)(2).

(C) the State consumer financial law is preempted by a provision of Federal law other than [the National Bank Act].

15 U.S.C. § 25(b)(1).

18.     The question of whether a state law requiring payment of interest on escrow accounts is preempted by the NBA was resolved by the Dodd-Frank Act itself, in which Congress expressly mandated that "[i]f prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law." 15 U.S.C. § 1639d(g)(3) (amending the Truth in Lending Act).  This provision made explicit that Congress's intent was to permit states to enact and enforce laws that require mortgage lenders to pay interest on escrow accounts, and that a state law requiring payment of interest on an escrow account does not "prevent or significantly interfere with" a national bank's powers.[4] Notably, the NBA does not preempt state laws that afford "greater protection" than federal finance laws (12 U.S.C § 551(a)).

19.     15 U.S.C. § 1639d(g)(3) is consistent with the regulations of the United States Department of Housing and Urban Development ("HUD"), which state that "[w]here escrow funds are invested, the net income derived from this investment must be passed on to the mortgagor in the form of interest  . . . *in compliance with any state and/or regulatory agency requirements* governing the handling and/or payment of interest earned on a mortgagor's escrow account."  HUD Handbook 4330.1, Rev-5, §§2-5 (emphasis added).

---

[4]     The latest that 15 U.S.C. § 1639d(g)(3) could have taken effect is January 21, 2013.  *See* Pub. L. 110-203, § 1400(c)(3) (Title XIV of Dodd-Frank takes effect 18 months after transfer date unless regulations were previously issued); Bureau of Consumer Financial Protection Designated Transfer Date, 75 Fed. Reg. 57, 252 (Sept. 20, 2010) (indicating a "transfer date" of July 21, 2011).

20.     Following the Ninth Circuit Court of Appeal's decision in *Lusnak*, Defendant's affiliate CitiMortgage settled an investigation commenced by the California Department of Business Oversight, wherein it agreed to retroactively and prospectively pay escrow interest to California borrowers pursuant to California's escrow interest statute. *See* https://dbo.ca.gov/2019/06/18/citimortgage-agrees-to-pay-7-8-million/.

21.     Further undercutting any position that NY Gen. Oblig. Law § 5-601 substantially interferes with Defendant's banking operations, on information and belief, Defendant currently pays escrow interest on some, but not all, escrow accounts on New York mortgage loans.

## CLASS ACTION ALLEGATIONS

22.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class (hereinafter, the "New York Class"):

> All customers of Defendant (or its subsidiaries) who, during the six years prior to the filing of the related action styled *347 Townhouse, LLC v. Citibank, N.A.*, S.D.N.Y. Case No. 19-cv-542-LAP (i) entered into a loan that was secured by an owner-occupied one-to-six family residence located in New York or property owned by a cooperative apartment corporation located in New York; (ii) paid monies into an escrow account held by Defendant or its subsidiaries, agents or affiliates, to cover the projected amount owed in taxes, insurance and other matters relating to the property or cooperative apartment corporation securing the loan; and (iii) received from Defendant less than the amount of interest required under NY Gen. Oblig. Law § 5-601.

23.     With respect to certain of the claims specified below, Plaintiffs bring this action on behalf of themselves and the following class (hereinafter, the "Multi-State Class"):

> All customers of Defendant (or its subsidiaries) who, during the applicable statutes of limitations for breach of contract claims based on the filing of the related action styled *347 Townhouse, LLC v. Citibank, N.A.*, S.D.N.Y. Case No. 19-cv-542-LAP  (i) entered into a loan with Defendant that was secured by property located in the states of Maryland or New York; (ii) paid monies into an escrow account held by Defendant or its subsidiaries, agents or affiliates, to cover the projected amount owed in taxes, insurance and other matters relating to the property

securing the loan; and (iii) received from Defendant less than the amount of interest owed under the law of the state in which the property was located.

Excluded from the New York Class and the Multi-State Class are (1) Defendant's officers, directors, employees, subsidiaries, parents, affiliates, joint venturers, agents and any entity in which Defendant has or had a controlling interest; (2) any judge to whom this case is assigned, along with his or her staff, and (3) immediate family of any individual excluded by (1) or (2)

24.     For purposes of this Complaint, the term "Classes" refers collectively to the New York Class and/or the Multi-State Class, the phrase "Class Members" refers to all members of the New York Class and/or Multi-State Class, and the term "Class Periods" refers to the New York and/or Multi-State Class Periods.

25.     Plaintiffs reserve the right under Rule 23 to amend or modify the Class definitions with greater specificity or further divide the Classes into subclasses or limit the Classes to particular issues, based on the results of discovery.

26.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to the provisions of Fed. R. Civ. P. 23 because there is a well-defined community of interest in the litigation and there is an administratively feasible way to identify Class Members.

27.     **Numerosity of the Class.  Rule 23(a)(1).**  The members of the Classes are so numerous that their individual joinder is impracticable.  The number of mortgages held by Defendant number in the thousands or more throughout New York, which is a reflection of the number of putative Class Members in this action.  Inasmuch as the Class Members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of Class Members can be ascertained.

Members of the Classes can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

28.    **Existence and Predominance of Common Question of Law and Fact.  Rule 23(a)(2) and 23(b)(3).**   There are questions of law and fact common to the Classes.   These questions predominate over any questions affecting only individual Class Members.   These common legal and factual issues include, but are not limited to:

    a.    Whether Defendant was required to pay interest on the escrow accounts of Class Members;

    b.    Whether Defendant has breached its mortgage agreements in States subject to the State Escrow Statutes;

    c.    Whether Defendant has engaged in deceptive acts, practices, statements or omissions;

    d.    Whether Defendant has been unjustly enriched by its illegal and inequitable conduct;

    e.    Whether Defendant must provide damages, restitution and/or reimbursement to borrowers in the amount of unpaid interest on funds held in escrow accounts based on the causes of action asserted herein; and

    f.    Whether injunctive relief is appropriate to prohibit Defendant from engaging in this conduct in the future.

29.    **Typicality.  Rule 23(a)(3).**  The claims of the representative Plaintiffs are typical of the claims of each member of the Classes.  Plaintiffs, like all other members of the Classes, has sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiffs and the members of the Classes were and are similarly or identically

harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

30.     **Adequacy.   Rule 23(a)(4).**   The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class Members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and Class Members that would make class certification inappropriate.  Counsel for the Plaintiffs and the Classes will vigorously assert the claims of all Class Members.

31.     **Injunctive and Declaratory Relief.   Rule 23(b)(2).**   Defendant's actions regarding its customers' escrow accounts are uniform as to members of the Classes.  Defendant has acted or refused to act on grounds that apply generally to the Classes so that final injunctive relief as requested herein is appropriate with respect to the Classes as a whole.

32.     **Predominance and Superiority of Class Action.  Rule 23(b)(3).**  This suit may be maintained as a class action because questions of law and fact common to the Classes predominate over the questions affecting only individual members of the Classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual Class Members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.   Further, it would be virtually impossible for the Class Members to individually redress effectively the wrongs done to them.  In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer

management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

33.     Plaintiffs contemplate the eventual issuance of notice to the proposed Class Members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, the representative Plaintiffs would contemplate the use of additional media and/or mailings.

34.     In addition to meeting the prerequisites of a Class Action, this action is properly maintained as a class action pursuant to Fed. R. Civ. P. 23(b), in that:

      a.     Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual Class Members will create the risk of:

         i.     Inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for the parties opposing the Classes; or

        ii.     Adjudication with respect to individual Class Members which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

      b.     The parties opposing the Classes have acted or refused to act on grounds generally applicable to each member of the Classes, thereby making

appropriate final injunctive or corresponding declaratory relief with respect

to the Classes as a whole; or

c.   Common questions of law and fact exist as to the members of the Classes

and predominate over any questions affecting only individual members, and

a Class Action is superior to other available methods of the fair and efficient

adjudication of the controversy, including consideration of:

i.   The interests of the Class Members in individually controlling the

prosecution or defense of separate actions;

ii.   The extent and nature of any litigation concerning controversy already

commenced by or against the Class Members;

iii.   The desirability or undesirability of concentrating the litigation of the claims

in the particular forum;

iv.   The difficulties likely to be encountered in the management of a Class

Action.

## CITIBANK WAS PROVIDED PRE-FILING NOTICE

35.   Prior the filing of this action, Plaintiffs provided Citibank and CitiMortgage with
written notice of the violations pled in this Complaint and an opportunity to cure.

36.   Those written notices were sent by certified first class mail and received by
Citibank and CitiMortgage.

37.   Citibank and CitiMortgage did not cure and have not paid Plaintiffs the interest
owed to them.

38.   Citibank's and CitiMortgage's failure to cure, along with its insistence in the
related action styled *347 Townhouse, LLC v. Citibank, N.A.*, S.D.N.Y. Case No. 19-cv-542-LAP

that they need not comply with the State Escrow Statutes nor pay interest on escrow accounts, demonstrates that pre-filing notice was futile.

## <u>RELATION BACK OF CLAIMS</u>

39.     Plaintiffs and the Classes' claims in this action relate back to the filing of the original *Class Action Complaint* in the related action styled *347 Townhouse, LLC v. Citibank, N.A.*, S.D.N.Y. Case No. 19-cv-542-LAP, Dkt. 1.  Plaintiffs are members of the putative classes pled in that related action.

**FIRST CAUSE OF ACTION**

**Violation of New York General Business Law § 349**

**(On Behalf of Plaintiffs and the New York Class)**

40.     Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged herein.  GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

41.     Defendant and its loan servicing subsidiaries, agents or affiliates, including CitiMortgage, engaged in deceptive methods, acts, practices, and conduct in the form of misrepresentations and/or material omissions during the conduct of business in New York in violation of GBL § 349(a) by engaging in the methods, acts, practices, and conduct described herein, including the following:

> a.     Deceptively misrepresenting in uniform Mortgage Agreements and other loan agreements originated or assigned to Defendant and/or its loan servicing subsidiaries, agents or affiliates that they would pay interest on escrow accounts where required by applicable state laws;

> b.     Deceptively omitting to disclose in uniform Mortgage Agreements and other loan agreements originated or assigned to Defendant and/or its loan servicing subsidiaries, agents or affiliates, or omitting to disclose in a timely fashion including before Mortgage and loan agreements were executed, that neither Defendant nor its loan servicing subsidiaries, agents or affiliates pay interest on escrow accounts where required by New York law;

> c.     Deceptively and unlawfully failing to pay interest to Plaintiffs and members of the New York Class on monies held in escrow accounts, even

though required by New York law, namely New York GOL §5-601;

d.    Investing Plaintiffs' and the New York Class Members' escrow funds for the financial gain of Defendant or its loan servicing agents or affiliates, while not paying interest to Plaintiffs and members of the New York Class on their money held in their escrow accounts.

42.    The foregoing deceptive methods, acts, practices, and conduct, all of which were directed at consumers and were therefore consumer-oriented, were and continue to be misleading in a material way because they misrepresent and omit the characteristics and benefits of maintaining an escrow account with Defendant and its loan servicing agents or affiliates.

43.    As a result of Defendant's acts and practices, Plaintiffs and members of the New York Class have suffered an ascertainable pecuniary and out-of-pocket financial losses equal to the loss of interest they should have received on monies held in their escrow accounts.

44.    In addition to their pecuniary losses, Plaintiffs and members of the New York Class suffered actual harm as a result of violations of GBL §349(a) by Defendant and its loan servicing agents or affiliates, including but not limited to the annoyance, harassment, time, frustration, anger, and anxiety.

45.    Plaintiffs and members of the New York Class, pursuant to GBL §349(h), seek (1) to recover the greater of actual damages or $50 dollars, or three times actual damages up to $1,000 if it is determined that Defendant willfully or knowingly violated applicable laws; (2) an injunction ending Defendant's unlawful conduct and other available equitable remedies including disgorgement, restitution and constructive trust; (3) pre-and post-judgment interest; and (4) costs and reasonable attorneys' fees.

46.     New York Class members who were sixty-five years of age or older at the time of Defendant's violations of GBL §349 are entitled to additional remedies pursuant to GBL §349-c to redress Defendant's violations of GBL §349(a) perpetrated against elderly persons.

47.     Defendant committed and continues to commit deceptive business acts and practices by failing to pay interest to Plaintiffs on money held in Plaintiffs' escrow account.

**SECOND CAUSE OF ACTION**

**Violation of New York General Obligation Law § 5-601**

**(On Behalf of Plaintiffs and the New York Class)**

48.     Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged herein.

49.     Defendant is a "mortgage investing institution" as defined by NY Gen. Oblig. Law §5-601 and New York Banking Law §14-b(5).

50.     Plaintiffs and all New York Class members are borrowers and parties to an agreement in connection with a mortgage for a one to six family residence or a property owned by a cooperative apartment corporation related to a property located within New York State.

51.     By the acts and practices alleged herein, Defendants violated NY Gen. Oblig. Law § 5-601.  Defendant committed and continues to commit violations of NY Gen. Oblig. Law §5-601 by failing to pay interest to Plaintiffs and New York Class members on money held in Plaintiffs' and New York Class Members' escrow accounts.

52.     On behalf of themselves and members of the New York Class, Plaintiffs seek (1) the interest due pursuant to NY Gen. Oblig. Law §5-601 but not paid by Defendant and/or its subsidiaries, agents or affiliates; (2) an injunction ending Defendant's unlawful conduct and other available equitable remedies including disgorgement, restitution and constructive trust; (3) pre-and post-judgment interest; and (4) costs and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### Breach of Contract

### (On Behalf of Plaintiffs and the Multi-State Class)

53.     Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged herein.

54.     Plaintiffs and all members of the Multi-State Class are parties to mortgage agreements or other loan agreements that require the payment of interest on escrow account monies.

55.     Plaintiffs' Mortgage Agreement, and the mortgage agreements of members of the Multi-State Class, are uniform instruments that contain standard language obligating the lender to pay interest on escrow account monies if required by the state law where the subject properties were located.  That standard language is set forth in the Mortgage Agreement with Plaintiffs, in Section 3(b):

> Lender will not be required to pay me any interest or earnings on the Escrow Funds *unless either* (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or *(2) Applicable Law requires Lender to pay interest on the Escrow Funds.*  (Emphasis added).

56.     Upon information and belief, Defendant's form mortgage agreements for properties located outside New York incorporate, adopt and require compliance with the State Escrow Interest Statutes in the states where the State Escrow Interest Statutes apply.  *See e.g.*, *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1191, 1197 (9th Cir. 2018), *rehearing and rehearing en banc denied* 2018 U.S. App. LEXIS 12745 (May 16, 2018), *cert. denied* 139 S. Ct. 567 (2018).

57.     By failing to pay interest on the escrow accounts of Plaintiffs and members of the Multi-State Class, Defendant breached Section 3(b) of the Mortgage Agreement for Plaintiffs,

and the same terms of its agreements with Multi-State Class Members requiring compliance by Defendant with the State Escrow Statutes.

58.     As a direct and proximate result of Defendant's breaches of contract, Plaintiffs and members of the Multi-State Class have suffered economic injury equal to the interest they were entitled to receive in connection with their escrow accounts.

59.     Plaintiffs seek (1) the interest due to themselves and the members of the Multi-State Class pursuant to the mortgages and other loan agreements with Defendant; (2) an injunction ending Defendant's unlawful conduct and other available equitable remedies including disgorgement, restitution and constructive trust; (3) pre-and post-judgment interest; and (4) costs and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Multi-State Class)

60.     Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged herein.

61.     Pursuant to FED. R. CIV. P. 8(d), claims for unjust enrichment are pleaded in the alternative to claims of Plaintiffs and the Multi-State Class for breach of contract stated in the Third Cause of Action herein.

62.     Plaintiffs and the other members of the Multi-State Class conferred a benefit on Defendant by paying money into escrow accounts and making that money fully useable by Defendant before payments from the escrow accounts on the mortgaged property were due.

63.     As a result of Defendant's failure to comply with the State Escrow Statutes and form mortgage agreements, Defendant was enriched at the expense of Plaintiffs and members of the Multi-State Class.

64.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and members of the Multi-State Class.

65.     Because Defendant's retention of the benefits conferred on it by Plaintiffs and members of the Multi-State Class would be unjust and inequitable, Plaintiffs seek restitution from Defendant and an order from the Court requiring Defendant to disgorge all profits, benefits, and other compensation obtained due to its wrongful conduct.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs ask the Court to enter a judgment:

1.      Certifying of the Classes pursuant to Fed. R. Civ. P. 23, certifying Plaintiffs as the representatives of the Classes, and designating its counsel as counsel for the Classes;

2.      Declaring that Defendant has committed the breaches of contract violations alleged in this Complaint;

3.      Granting damages, statutory damages where applicable, and exemplary damages where applicable, restitution, or disgorgement to Plaintiffs and the Classes, and the creation of a constructive trust for the benefit of Plaintiffs and the Classes;

4.      Granting declaratory and injunctive relief to enjoin Defendant from engaging in the unlawful described in this Complaint;

5.      Granting compensatory damages, statutory damages where applicable, and exemplary damages where applicable, the amounts of which is to be determined at trial;

6.      Granting punitive damages;

7.      Granting pre- and post-judgment interest;

8.      Granting attorneys' fees and costs; and

9.      Granting further relief as this Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED:  October 26, 2021

**GISKAN SOLOTAROFF**
 **& ANDERSON LLP**

By:  _/s/_ Oren Giskan
Oren Giskan
ogiskan@gslawny.com
Michael Jaffe, Of Counsel
90 Broad Street, 10th Floor
New York, NY  10004
Tel. (646) 964-9644

**TUSA P.C.**

By:  _/s/_ Joseph S. Tusa
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
55000 Main Road, 2nd Fl.
Southold, NY  11971
Tel. (631) 407-5100

_Attorneys for Plaintiffs and_
_Proposed Classes_